Bookwalter v. Lansing.

---

FRANCIS M. BOOKWALTER, APPELLANT, V. JAMES F. LANSING AND SAMUEL W. DEFFIBAUGH, APPELLEES.

1. **Principal and Agent:** SALE BY AGENT. Where an agent for the sale of real estate conceals from his principal material facts relative to the value of the property to be sold, and by a subterfuge fraudulently purchases the property from his principal in the name of another, for less than its value, the principal may, by proper proceedings in equity, rescind the sale and require a reconveyance of the property from the agent. But this rule would have no application if the agent, in good faith and without any design to obtain the property for himself, sold it to a purchaser, reported the sale to his principal, giving the terms

and conditions thereof, and after the ratification of the sale by the principal, purchased the land from the party to whom it had been sold and received a conveyance from him, no fraud having been perpetrated against his principal.

2. **Trial.** Questions of fact are for the trial court to determine, and a decision thereon will not be molested by an appellate court unless manifestly wrong.

APPEAL from the district court of Lancaster county. Heard below before HAYWARD J.

*Harwood, Ames & Kelly,* for appellant, cited: *Gardner v. Ogden,* 22 N. Y., 327. *Morgan v. Hardy,* 16 Neb., 427. *Davoue v. Fanning,* 2 Johns. Ch., 252. *Ruckman v. Bergholz,* 37 N. J. Law, 437. *Fry v. Platt,* 32 Kan., 62.. *Ferguson v. Dent,* 24 Fed. Rep., 412. *Brown v. Post,* 1 Hun, 304. *Ingle v. Hartman,* 37 Iowa, 274.

*I. W. Lansing* and *Sawyer & Snell,* for appellees, cited: *Ahlman v. Meyer,* 19 Neb., 66. *Staley v. Murphy,* 47 Ill., 244. *Grymes v. Saunders,* 3 Otto, 55. *Brown v. Waters,* 7 Neb., 424.

REESE, CH. J.

This action was brought by plaintiff, in the district court of Lancaster county, against defendants, to set aside a deed to real estate. The allegations of the petition may be briefly stated to be, that plaintiff is a citizen of the state of Ohio, and was, on and prior to the 9th day of September, 1885, the owner, in fee simple, of a tract of land known as block nine in East Lincoln; that on and prior to that date he had employed defendant, Lansing, who was a citizen of Lincoln, and engaged in the business of real estate agent and broker, in said city of Lincoln; that at the time mentioned, plaintiff, being a resident of another state, was not familiar with, and was ignorant of the values of real estate and of the property mentioned; but that Lansing,

by his long residence and acquaintance, and the nature of his business, was thoroughly informed as to said value, and that plaintiff, as defendant well knew, reposed full confidence in his skill, judgment, and integrity in the management and sale of plaintiff's property; that on or about said date, the defendant, Lansing, seeking and contriving to cheat and defraud plaintiff, by taking advantage of, and abusing the confidence reposed, informed plaintiff by letter that he had sold said block nine, at its fair and reasonable market value, to the defendant Deffibaugh, whom Lansing represented as residing at Bedford, Bedford county, Pennsylvania, for the agreed price of $3,000, $1,500 thereof to be paid in cash, upon the delivery of the deed, and $1,500 to be paid in one year, secured by mortgage on the property. Plaintiff alleges that, relying on the statement and representations made by Lansing, he affirmed the sale, and executed, acknowledged, and delivered a deed of that date to Deffibaugh, and transmitted the same to defendant Lansing, for delivery, pursuant to said pretended contract of sale, and that Lansing remitted to plaintiff the sum of $1,400 in cash and the mortgage, executed according to the agreement, for $1,500, reserving $100 in cash as his commission for perfecting the sale.    It is alleged that Lansing had not at said time negotiated a sale of the block to Deffibaugh, or to any other person; that Deffibaugh did not reside in Pennsylvania, but that he was a resident of Lincoln, was without means and of no pecuniary responsibility, and was, and for a long time prior thereto had been, in the employ of defendant as a coachman and man of general work about defendant's residence and buildings in the city; and that the sole object and purpose of defendant Lansing, in making the statement referred to, and inducing plaintiff to convey the block to Deffibaugh, was to enable defendant Lansing to procure the title thereto in his own name and for his own use, for a sum greatly below what defendant Lansing then knew to be its fair and

reasonable market value; that prior to the letter reporting the sale, defendant Lansing had been offered $6,000 in cash for the property, and at the time well knew the value to be of at least $9,000; 'that the deed was received in the city of Lincoln on the 14th day of September, but prior to the date of its being filed for record in the clerk's office, and the date at which the mortgage from Deffibaugh to the plaintiff purports to have been executed and filed for record, Deffibaugh conveyed the property, subject to the mortgage, to defendant Lansing, Lansing assuming and agreeing to pay the mortgage; that Deffibaugh never at any time paid to plaintiff, or to Lansing, or to any other person, the said sum of $1,400 transmitted to plaintiff by defendant Lansing, or any other sum, for or on account of the pretended purchase, but that the money was furnished and paid by Lansing out of his own means, and the deed procured to be executed by plaintiff to Deffibaugh was but a device on the part of Lansing to defraud plaintiff out of said land; that at the time of the execution of the deed plaintiff relied upon the false representations of Lansing, fully believing the same to be true, and that Lansing had sold the land to Deffibaugh in good faith, for $3,000, and that the same was the full market value of the property; that during the year 1885, on account of the proposed building into the city of Lincoln of the Missouri Pacific and the Fremont, Elkhorn & Missouri Valley railroads, and other projected enterprises at said city, the real property therein had greatly advanced in value, but of which plaintiff was ignorant, and of which Lansing was well acquainted; but that Lansing, for the purpose of defrauding plaintiff, and with the intention of procuring plaintiff's property for a price below its real value, concealed this knowledge from plaintiff. The prayer of the petition is, that the defendants be enjoined from transferring or incumbering the property, and that the conveyance be set aside, and that defendant Lansing be directed to reconvey the property to plaintiff.

The answer of defendants denies the allegations of the petition, so far as any concealment or fraudulent purpose or act might be alleged; admits the ownership of plaintiff in the property in question, prior to the 9th day of September, 1885, and that defendant Lansing was employed by plaintiff to look after and take care of the plaintiff's property, to collect rents, pay taxes, and also in trying to obtain offers of purchase for the real estate owned by plaintiff in and about Lincoln, and submitting them to plaintiff for his approval and action therein, and if the offers of purchase were accepted by plaintiff and the sale made, then defendant was paid by plaintiff a commission for the finding of the purchaser, and not otherwise. With this exception, the agency of Lansing is denied. It is alleged that shortly prior to the ninth day of September, 1885, defendant Lansing was directed by plaintiff to try to find a purchaser of the property in question for the sum of $3,000, the price fixed by plaintiff, and in pursuance of said order and direction, Lansing, from that time on until the date of the purchase, tried to find and obtain an offer of $3,000 for the property, and was unable to do so until the date mentioned. But that on said date he received an offer for said property, and submitted the same to plaintiff for his approval, and if satisfied the plaintiff was requested to approve the same and execute a deed therefor; that plaintiff had often visited the city of Lincoln, and was well advised of the true value of real estate, and that the price at which the property was sold was fair and reasonable; that at the time he received the offer and transmitted it to plaintiff, defendant Lansing had no intention whatever of purchasing the property, but acted in good faith, and it was not until he had been disappointed by Deffibaugh, in his failure to meet the first payment, that he, Lansing, procured Deffibaugh to make to him the deed to the property, and upon which he then furnished the money out of his own funds.

The reply consisted of a denial of the allegations of the answer.

The cause was tried to the district court, the result of such trial being a decree in favor of defendant Lansing, and a dismissal of the plaintiff's action. From this decree plaintiff appeals.

As we view the case, our decision must be based more upon an examination of the evidence submitted to the trial court, than upon questions of law. For the purposes of this case, we may assume that the relations existing between plaintiff and defendant were of such a confidential nature as to preclude the latter from dealing with the former with respect to the land in controversy, or purchasing the same from him, without acquainting him of the identity of the purchaser, and putting him in full possession of all of defendant's own knowledge concerning the value of the land, the condition of the market, and such other facts as plaintiff was ignorant of affecting its value; for if defendant was the agent of plaintiff, for the purpose of selling his real estate, and by fraudulently concealing from plaintiff the condition of the market, or circumstances affecting the land which would make it appreciate rapidly in value, and for the purpose of carrying out his fraudulent scheme procured the deed to be made to Deffibaugh, in order that he might more perfectly practice his fraud upon plaintiff, he could not hold the title thus obtained. But a material question involved in this inquiry is, was the purchase made by Lansing substantially for his own use, and did he procure a conveyance from plaintiff to Deffibaugh as a device or means for obtaining a title, without the knowledge of plaintiff, for the purpose of avoiding suspicion as to the real nature of the transaction?

We have carefully examined the testimony contained in the bill of exceptions, and cannot see that the finding of the district court in favor of defendant upon this question is unsupported by it.

It is alleged by plaintiff, and admitted by defendant, both by his answer and in his testimony, that Deffibaugh was a man of little, if any, means, and was in the employ of defendant, and had been for a year and a half. But defendant testified that the sale was made to Deffibaugh in the utmost good faith, and that no suggestion had been at any time made by either of them, or by any one else, that the purchase should be for the benefit of defendant. It is shown that plaintiff had instructed defendant to sell the property for $3,000, one-half cash, the balance on time, secured by mortgage, and that defendant had sought and endeavored to sell the property at the price named. It is shown that on the 14th day of August, 1885, one Starr, who was also in the employ of defendant, submitted to plaintiff, through defendant, a proposition to purchase one-half of the block for $1,500, upon the same terms as to payment as asked by plaintiff in case of the sale of the whole block. On the 26th of August, plaintiff wrote defendant, declining to accept this offer, saying, "You ask if I would sell the west half of block nine, East Lincoln, for $1,500, $700 cash, year, eight per cent interest. I would not like to sell the best half in that way or for that price. I think I must have $3,000 for the whole of it, and as much cash as possible." This offer was made pursuant to an understanding with Mr. Talbot, that if Starr could purchase half of the block, he would take one-fourth and Mr. Talbot the other, making four lots each. This proposition being rejected by plaintiff, defendant sought to find a purchaser for the other half of the block, and by consolidating the two, dispose of the whole. He testifies that shortly before the 9th of September, or day of sale, he saw Deffibaugh conversing with a real estate agent upon the street, and ascertained from him that the agent was trying to sell him property in Lincoln, and that he thought of purchasing, as he expected some money from relatives in the East. Deffibaugh's sister, at that time, had $200 in

the possession of defendant, which he knew could be used in making the purchase. He proposed to Deffibaugh that he purchase the other half of the block in question, went with him to see it, and Deffibaugh concluded to make the purchase. It was then agreed that the deed should be made to Deffibaugh, and he would in turn convey one-half of the property to Starr. The deed was forwarded to plaintiff for his signature, with a letter containing a statement of the sale to Deffibaugh. The sale was approved, the deed executed and forwarded to a bank in Lincoln for delivery upon the payment of the part of the purchase money which was to be in cash, and the execution of the proper note and mortgage for the remainder. At the same time plaintiff telegraphed defendant that he desired to leave his home in a few days for a time, and urging that the matter be closed up at once, so that he might receive the money and papers before going. About the 14th of September, 1885, defendant was notified that the deed had been received by the bank. He then informed Deffibaugh of the fact, but Deffibaugh had not yet received his money, and could not make the payment. Defendant then stated to Deffibaugh that he would advance the money for him, and Deffibaugh could convey the land to him, defendant, and after he received his money and made the payment defendant would reconvey to Deffibaugh. About this time a difficulty arose between Deffibaugh and Starr as to the manner of conveying the property to Starr, both Starr and Talbot desiring to own their part of the block in severalty, while neither Deffibaugh nor defendant desired a division. Talbot had made his check in favor of Starr for the money which was to be furnished by him, which check had been delivered and held by Starr. But upon their failing to agree as to the division of the property, the check was afterwards returned to Talbot and destroyed, and both Talbot and Starr declined to proceed further with the trade. Deffibaugh failed to receive suf-

ficient money to make his payment, and the title continued to remain in defendant. If this was true, we fail to see any want of good faith on the part of defendant. If, as he says, he had no design or purpose of procuring the title himself, and had no knowledge that those who had agreed to purchase would fail to carry out their contract, until after the deed had been received in Lincoln, and after he had been notified, both by telegraph and by letter from plaintiff, to push the sale to a completion as rapidly as possible, and after he had agreed to and had advanced the money for Deffibaugh, upon the supposition that Deffibaugh would still be able to carry out his contract, that upon Deffibaugh's subsequent failure he had accepted the title from him, and assumed the payment of the mortgage to mature one year from the date of purchase, we are unable to say that the district court erred in finding that the sale to Deffibaugh by defendant was *bona fide,* and that the purchase or taking of the title was in good faith.

It is insisted that, about the time of this purchase, the Missouri Pacific Railroad Company and the Fremont, Elkhorn and Missouri Valley Railroad Company had decided to build their roads into the city of Lincoln, and that a general and rapid appreciation of values of real estate was the result; and that on the 9th day of September, 1885, the date of the transmittal of the deed to plaintiff for his signature, the street railway company had determined to construct a line of its road eastward on O street, to 27th, terminating near the property in question, which would also add to its value, and that these facts were not communicated to plaintiff by defendant.

We presume that this could make no difference, if the sale was actually made to Deffibaugh in good faith by defendant. But, if made for the purpose of procuring the title on the part of defendant, they would be important. As to the construction of the street railway, defendant testifies that, at the time of sending the deed to plaintiff for

his signature, and during all the time of his negotiation of the sale to Deffibaugh and Starr, he had no knowledge whatever of the purpose of the street railway company to construct its road on O street, and there is no testimony to show that he did. As to the construction of the other roads referred to, it does not very definitely appear what advancement had been made, but of this plaintiff was not entirely ignorant; for in a letter of May 13, 1885, defendant wrote him saying that the railroad project was talked of, but nothing definite had been done; so that, upon the face of this record, we cannot see that any important facts of which defendant had knowledge, and plaintiff had not, were concealed by defendant.

The deed forwarded to plaintiff, by defendant for execution, was written so as to convey "unto Samuel W. Deffibaugh, of the county of Bedford, and state of Pennsylvania," the property in question. This, it is insisted, was so written for the purpose of deceiving plaintiff as to who the real purchaser was, and since it is admitted that Deffibaugh was in the employ of defendant, and that defendant well knew he resided in Lincoln, this fact, unexplained, would tend to show an improper motive on the part of defendant. But upon this point defendant testified that the deed was not in his handwriting, but in that of Mr. Starr; that Starr was a clerk in defendant's office, and drew deeds and other instruments for defendant; that defendant wrote the letter and instructed Starr to prepare the deed conveying the land to Deffibaugh, which Starr did, placing it with the letter and forwarding it to the plaintiff; but that the deed was never seen by defendant until after its return to Lincoln, executed by plaintiff; that he had no knowledge of the recital referred to, and that it was not made upon any suggestion or intimation on his part.

It is contended that the property was of much greater value than the amount for which it was sold, and of which

fact defendant had full knowledge. Upon this part of the case there were a number of witnesses examined. On the part of plaintiff, Mr. Horn and Mr. Tuttle testified that the property was worth about $8,000; Mr. McMurtry from $4,800 to $6,400; Mr. Hoxie, $7,200. On the part of defendant, Mr. Tucker testified that the property was worth $3,000, Mr. Atkin, $3,200; Mr. Hooper, from $3,100 to $3,200; Mr. Andrus, from $2,500 to $3,500; Mr. Tibbetts, $3,200; Mr. Brace, $3,200. Upon this question there seems to have been a sharp conflict, the preponderance of testimony being rather in favor of defendant. It is shown by Mr. Andrus that on the last of August, or the first of September, defendant offered him the property for $3,000, and by Mr. Tibbetts that about the first of September Mr. McManigal offered it to him for $3,000, both parties declining to purchase. These questions of fact were all submitted to the trial court, and its findings thereon, by the uniform decisions of this court, are entitled to the same consideration as the verdict of a jury would be, under like circumstances. We are not only not prepared to say that the decision is unsupported by the evidence, but are impressed with the belief that it is amply supported thereby. It is quite true that about the time of this transfer, or prior thereto, that real estate in the city of Lincoln had increased in value at a very rapid rate, and that since this purchase the property has been of much greater value than was realized by plaintiff, but that fact will not be sufficient to avoid the sale, if made to Deffibaugh by defendant, in good faith. Neither would it affect the rights of defendant, if, after the transfer, he, by a contract with Deffibaugh, became the owner.

We therefore think the judgment and decree of the district court must be affirmed, which is done.

JUDGMENT AFFIRMED.

THE other judges concur.