Jeffries v. Robbins.

---

WILLIAM A. JEFFRIES *et al.*, etc., v. J. E. ROBBINS.

No. 13,011.   (71 Pac. 852.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT — *Judgment on Pleadings.* Where an action is brought on an alleged contract, and, after the defendants plead denying the contract, the parties stipulate that whatever contract was made is contained in letters attached to the stipulation, and the defendants move the court for judgment on the pleadings and stipulation, it is the duty of the court, if the letters do not establish a contract, to sustain the motion.

2. AGENCY — *Sale of Realty — Fraud — Forfeiture of Commission.* It is the duty of one acting for another in the sale of real estate, whether for compensation or otherwise, faithfully and truthfully to make known to his principal all matters pertaining to the transaction, and, if he violates this duty and fraudulently

misrepresents the facts concerning his transactions, and undertakes to derive an advantage therefrom to himself, he forfeits any compensation that would otherwise be due him, and all gain made thereby belongs to his principal.

Error from Butler district court; V. P. MOONEY, judge *pro tem.* Opinion filed March 7, 1903. Reversed.

*Ira E. Lloyd,* for plaintiffs in error.

*H. W. Schumacher,* and *Redden & Kramer,* for defendant in error.

The opinion of the court was delivered by

GREENE, J. : The defendant in error sued the plaintiffs in error on two causes of action to recover the sum of $600. The allegations of the first cause were, in substance, that the defendants were the owners of certain real estate, and that E. W. Wellington was their agent with power to sell, or place the land in the hands of other real-estate agents to sell; that on or about the 4th of May, 1900, Wellington placed said lands in the hands of plaintiff to sell, under an agreement between plaintiff and Wellington that if plaintiff would procure a purchaser for such lands who would pay defendants $2000 net, one-half cash and one-half secured by mortgage, plaintiff might have as compensation for his services any sum he might receive over the $2000; that in December, 1899, he procured a purchaser for the land at an agreed price of $2800, $1800 cash, and $1000 on time, secured by a mortgage on the real estate; that the purchaser paid plaintiff $200 as a part of the consideration, and that plaintiff notified Wellington of the sale, which was finally consummated, and defendants received $2600, being $600 in excess of the amount for which it was agreed plaintiff might sell, and that such excess was due him.

The second cause of action differed from the first only in that it was stated that the land was placed in the hands of plaintiff for sale for $2000 net to defendants, and he sold the same for $2800, receiving $200 as part consideration; that by the custom of the country he is entitled to receive for his services the excess over and above the $2000, or $600, for which he prays judgment.

Appropriate pleadings were filed by defendants, putting in issue all facts, except that plaintiff secured the purchaser who actually purchased the land and paid the defendants the sum of $2600. The defendants also pleaded that plaintiff was their agent to sell the land, and that he was guilty of fraud and misrepresentations in the transaction, which, if true, would not only defeat his right to recover the amount sued for, but would entitle them to recover from him the $200 which he had received, and for which they prayed judgment.

At the trial it was stipulated by the parties that whatever agency existed between the parties was contained in certain letters, which were collated and are in the record.

The correspondence opened with the following letters:

"ELDORADO, KANSAS, May 1st, 1899.
"*Hon. E. W. Wellington, Ellsworth, Kansas:*

DEAR SIR—I am shoing land to Eastern parties in and around the South East ¼ of Sec. 1–25–4 E. I have all ready bought Sec 7 25 R. 5 at $6. pr acre, if you can give me a fair price on your quarter I want you people to get all they can. I have the 200 acer and 240 acer all join the 160 of yours listed at $10 per acre the 160 of yours is worth more than the 200 or 240, because there is more improvements, but the RR cuts of the right of way about 5 acers leaving 155 aces. about the improvements they are in terable

shape as the property has ben rented for 10 years without anny repairs; thare is no water on the place, the buildings are not fit to live in; thare is hardly a place big enough to set a bed, the roof leaks so. I have not shoed it as I could not make a price the parties that will be here are farmers from Illinois, they do not pay much cash. I belieav I can get you $1600.00 Sixteen hundred dollars $800.00 cash, mortgage back for $800.00, 5 years privalege of paying $100 or more at anny intriest payment. The rent you get amounts to nothing after the taxes are paid, and the property runing down all the time. I am writing you jest as it is, Land adjoining on the east sold for 6 per acre last week. I wish you could see it as it is Write me on return mail as I expect parties wednesday here to look at lands. yours Resp.

J. E. ROBBINS.''

"ELLSWORTH, KAN., May 4, 1899.

"*J. E. Robbins, El Dorado, Kan.*: DEAR SIR—Yours of the 1st inst. received. You will remember that about two years ago you submitted an offer of $2000 for the Washburn farm, S. E. ¼ of 1–25–4, which offer we at that time accepted, but your party went back on his deal. With the very much-improved condition of farms in Kansas at present, we feel that this farm is worth, if anything, more than it was at that time, and we are therefore unwilling to sell it for less than $2000 net to us. We would very much like to have $1000 of this paid in cash, but possibly we could induce the owner to accept $800 cash and the balance on time. If you can handle this farm on this basis, we should be pleased to hear from you further.

Very truly yours, E. W. WELLINGTON.''

It is impossible to give these letters the construction claimed by plaintiff in his petition as a foundation for his first cause of action. Such conclusion is not even inferable from the language; in fact, there is no language used either by plaintiff or Wellington indicating that plaintiff was asking for such agreement

or that Wellington supposed he was. Robbins's letter appears to be a general disparagement of defendants' land, its improvements and surroundings. He states that he had not offered it for the reason he could not make a price, but believed he could get $1600, and asked Wellington if he could sell for that price. Wellington replied that defendants would not accept less than $2000. If anything is necessary, outside these letters, to convince one that no such contract as alleged in plaintiff's first cause of action was contemplated, it may be found in the next letter written by Robbins July 16, 1899, which reads :

"I had a man with me from Illinois Driving out west in Butler Co I shoed the S. E. ¼ Section 1 25 Range 5 in looking over my letters I find one from you Aug. 23d 1898.

"You said 2000 would by the ¼ Section. I wish you would ask the Co of $10 pr acre $1600 cash and I have this years crop or rent as my commission. I believe I could use it pleas write me at once.

Yours Reps.    John E. Robbins."

To this Wellington replied :

"Yours of the 16th inst. received. We would not think of selling the Washburn farm for less than $2000 net to us. We should not be so very particular about the whole amount's being paid in cash, although we would not object if the purchaser preferred to do this, but in case we sold on time, we would want, say, half cash and the balance in 3 or 5 years with 7% semiannual interest. You describe the land as the S. E. ¼ of 1–25–5. It should be the S. E. ¼ of 1–25–4.

Very truly yours,<br>E. W. Wellington."

This correspondence was followed by other letters of a similar nature. On November 16, 1899, several days after the sale was agreed upon, Robbins, among other things, wrote :

"I hate to do business for nothing so I write you

today,   I shoed the land to a man from Illinois, he will pay $2000.00 ½ cash and bal 200.00 and intrist each year for 5 years *but I get nothing* if you will give me $100.00 it would help me to close the deal   .   .   . Now I will tell you what he wants, you to make a deed the concideration $3000.00 or purchase money. I suppose you see why he wants it this way, he pays me cash in hand 2 or 300 as a forfeit if he dont put up the balance when the Deed and abstract is completed. I am so sure that I can make the deal I write you this the man agreed to send me forfit money as soon as I here from you and ancr this by return mail want to have your other lands here in Butler Co.''

To this Wellington replied that he would not sell the land for less than $2000, but if Robbins could sell it for $2100 he would divide the $100 with him.

On November 23 Robbins wrote :

''I can get jest $2000 dont believe it can be raised a dollar more, I will make this proposition he did not want to buy at all but wanted to rent, he ofered $100 cash in advance for next year, I told him I could promis nothing but would write you. then he wanted to know if $10 pr. acre, I seis no then he offered 12.   I told him perhaps $12.50 net to you might by it, then he wanted to know if he could pay ½ cash bal on time, then I shoed him your letter to me, 1000 cash and bal on three instalment notes $333,⅓ each he said he would take it.   I thought thar would be a com to me out of the $2000 of 5 pr ct. but he has seen your lettr to me and it will be hard to rais on him now.   .   .   . I hate to disapoint the Old man Ketsler his uncle and will say it will cost me nothing to make my part of the deal. I have corn and hay one half mile from him and may be able to sell some that will help me out   .   .   .   he wants to put in a pump and paint the Old house and barn and trim the hedge and sell so he says that is why he wants the deed call for $3000.   Pleas answer what you will do, rent for $100 cash mar 1st or $2000 as I wrote you.   you ought to be able to get something you wont get ½ of that I don't

believe this year it dont look that way to me.   I will write him as soon as we can agree.

"Terms : $2000.00  $1000.00 cash, ball in three instalments note. $333⅓ Due Dec. 31st, 1900 ; $333⅓ Dec. 1901 333⅓. 1902 at 6 pr ct intrist annually this is what he said he would do if he could not get money cheaper at home.   Answer at once."

To this Wellington replied, in substance, that he did not understand Robbins's letter, but if Robbins intended to make him an offer of $2000 net, subject to certain conditions therein stipulated, he would deal with him.   On November 27, Robbins replied as follows :

"Your letter of the 25 at hand contents noted.   I recd a letter from J. F. Ellas that he would send money this week to bind the bargin, but did not say how much. . . . I recd a letter yesterday from J. F. Ellas, he will send money to close deal this week with instructions."

On the 29th of November Robbins wrote :

"I must hear from you ore the deal is off, I will pay $2000.00 what other lands have you here, give me a descriptn of yr othr land, is thare a shoe to get a dollar in your othr lands, it is to bad to do business for nothing, it may help me to make other deals.   Wellington make deed to J. F. Ellas, concideration $3000.00 send to State Bank of El Dorado."

On December 1, 1899, Wellington replied :

"I do not understand the one you wrote last at all. As I have stated to you in previous letters, we are willing to sell this farm through you, at $2000, net to me, free of all commissions and other expenses. We will accept $1000 cash and the remainder can be paid in three equal instalments, with 7 % semiannual interest, the deferred payments to be secured by a first mortgage on the land, we to reserve all of the crops grown and matured during the season of 1899.

We will make the consideration in the deed $2000 and no more."

On December 2 Robbins answered that he would take the land in his own name; that Ellis wanted the deed to show the consideration $3000, as he intended trading the land for Illinois land.

On December 5 Wellington declined Robbins's offer December 7 Robbins wrote him that he had just heard from Ellis, and that he would take the land and pay interest at seven per cent. on deferred payments. This correspondence was continued until February 9, when Wellington wrote Robbins that he had ordered all papers pertaining to the sale of the land returned.

"This action is due to the fact that we have discovered that you have practiced fraud on us throughout this sale. You represented to us that you were getting but $2000 for this land, while in reality you were getting $2800 from Ellis. At the time you made the request for a consideration of $3000 in the deed we did not think particularly strange of it, but now we can see quite plainly the animus of the request. We have transferred the land to Mr. Ellis direct and have received from him a mortgage for $1000 and $1600 in cash."

The argument of counsel for defendant in error is that the contract was not consummated in May, as alleged in the petition, but by the letters of November 25 and the reply thereto, dated the 27th. They say :

"We contend that the only reasonable construction to be placed upon the contract of employment between plaintiff and defendants is that the defendants were to receive $2000 *net* for the land, and all above that was to be the compensation of the plaintiff, and that such was not only understood by the plaintff, but was understood by the defendants."

We are unable to put this construction upon the

letters.    We do not find that such a proposition was
made by Robbins or Wellington.    In view of some of
the statements in the letters written by Robbins to
Wellington, such construction would seem to be con-
trary to Robbins's notion prior thereto, at the time
and after he had made the sale.    In his letter of No-
vember 16, he says :   "I hate to do business for nothing,
so I write you to day, I shoed the land to a man from
Illinois. he will pay $2000.00 ½ cash, bal $200.00 and
intrist each year for 5 years. but I get nothing.    If
you will give me $100.00 it would help me to close
the deal."    Again, on November 23, after insisting
that he could only get $2000, he says :  "shoed him
your letter to me, 1000 cash and bal on three instal-
ment notes 333⅓ each he said he would take it.    I
thought thar would be a com to me out of the $2000
of 5 pr ct."

From these letters it would seem that Robbins was
not expecting to receive the excess over $2000.    He
was hoping for a commission of five per cent.    Further
in the same letter he said : "I hate to disappoint the
Old man Ketsler his uncle, and will say it will cost
me nothing to make my part of the deal.    I have corn
and hay one half mile from him and may be able to
sell some that will help me out."    This letter informs
Wellington that he had consummated the sale, and it
seems to have been on the terms submitted by Well-
ington.    The statement in his letter, that all he
expected was to sell his corn and hay, cannot be recon-
ciled with the contention of counsel that Robbins had
a contract for, and was expecting, all he could secure
over the $2000.

These letters not only fail to prove the existence
of the contract sued on, but disprove the contention
relied on for the second cause of action.

When lands are placed in the hands of a broker for sale at a net price to the owner, with the understanding that his commission or compensation depends entirely upon what he may be able to get for the land over and above the net price to the owner, he is entitled to the excess for which he sells. The letters in this case, however, affirmatively show that this was not the contract between the parties to this transaction, and was not relied on as such by Robbins. They also affirmatively show that Robbins did not expect any compensation for his services other than that this transaction might assist him in making other sales, and what advantage he might gain by selling his corn and hay to the purchaser of the land. He continued to ply Wellington with requests for a commission, and stated to him, both before and after the sale was consummated, that he was not getting anything out of the transaction.

After the filing of the stipulation the defendants moved the court for judgment on the pleadings and stipulation, which was overruled. This is complained of as error. Where the facts are agreed upon it is the duty of the court to declare whether such facts will sustain a judgment on the pleadings. From what has been said, it follows that the court below erred in overruling this motion for judgment.

After the evidence was in the defendants demurred thereto, which was overruled. This is assigned as error. It is made to appear by the pleadings and stipulation that Robbins was the agent of defendants in the sale of their real estate, and that while so acting he persistently and fraudulently misrepresented almost every fact in the transactions he had with them. His zigzag and sinuous course in his dealings, as disclosed by the trial, stamps him as wholly unworthy of confi-

dence or credence.   After having made the sale for $2800 he falsely represented to defendants that he was only receiving $2000 for the land, and asked that he have a commission of five per cent.   He asked defendants to put the consideration in the deed $3000, as he stated, upon the request of the purchaser.   The evidence proves this to be a falsehood ; the purchaser had made no such request.   This was for the purpose of further deceiving the defendants as to what he had received for the land.   There was scarcely a letter passed from Robbins to defendants, during the entire correspondence, that was not tainted with deception and fraud.

It is the bounden duty of one who acts as agent of another, whether for a consideration or not, to be faithful in the discharge of the assumed duties.   It was the duty of Robbins, as the agent of the defendants, to inform them truthfully of his transactions concerning the sale and purchase of this land, and disclose to his principal all facts known to him material to the transaction.   ( *Young v. Hughes*, 32 N. J. Eq. 372 ; *Bookwalter v. Lansing*, 23 Neb. 291, 36 N. W. 549 ; *Hall v. Gambrill et al.*, 92 Fed. 32, 34 C. C. A. 190.)

The law will not tolerate such conduct as is exhibited on the part of Robbins.   Under the facts of this case, even if it were shown that he had a contract for a commission or pay for his services, his fraudulent conduct deprives him of the right of recovery. ( *Hampton v. Lackens*, 72 Ill. App. 442 ; *Cottom v. Holliday*, 59 Ill. 176 ; *Farnsworth v. Hemmer*, 1 Allen, 494, 79 Am. Dec. 756 ; *Rice v. Wood*, 113 Mass. 133, 18 Am. Rep. 459 ; *Holcomb v. Weaver*, 136 id. 265 ; *Walker v. Osgood*, 98 id. 348, 93 Am. Dec. 168 ; *Fuller v. Dame*, 18 Pick. 472 ; *Bollman v. Loomis*, 41 Conn. 581 ; *Atlee*

*v. Fink,* 75 Mo. 100, 43 Am. Rep. 385 ; *Collins et al. v. McClurg,* 1 Colo. App. 348, 29 Pac. 299.)

The judgment of the court below is reversed and the cause remanded.

All the Justices concurring.