No. 18,661.

E. J. CRAWFORD et al., a Copartnership, etc., *Appellees,* v. THE SURETY INVESTMENT COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. REAL-ESTATE AGENT—*In Employ of Both Vendor and Purchaser—Compensation—Burden on Agent to Prove Knowledge and Consent of Both Parties.* A real-estate broker, acting in the same transaction for both vendor and purchaser, assumes a dual agency, which the law disapproves, and he can not recover compensation from either principal without showing the free consent of both; the burden rests upon him to show a full disclosure of his dual agency, and it should appear that knowledge of every circumstance connected with his employment by either was communicated to the other, in so far as the same would naturally affect his action as agent.

2. SAME—*Dual Agency—Ignorance No Excuse for Fraudulent Conduct.* A party will not be permitted to escape the consequences of his fraudulent conduct on the plea that he thought he was acting within his rights in a transaction contrary to sound morals and forbidden by public policy.

3. SAME—*Evidence.* Upon the facts stated in the opinion, held, that there was no evidence sufficient to warrant the court in submitting to the jury the question whether the dual agency was exercised by the plaintiffs with the full knowledge and free consent of the defendant.

4. AGENT'S CONTRACT—*To Sell Real Estate—When Entire—When Divisible.* The general rule is that whether or not a contract is entire or divisible is one of construction to be determined by the court according to the intention of the contracting parties as ascertained from the contract itself and upon a consideration of all the circumstances surrounding the making of it.

Crawford v. Investment Co. ·

5. SAME—*Action for Compensation Prematurely Brought.* The
   defendant purchased a tract of land consisting of 1167 acres,
   and agreed with plaintiffs, in consideration of their services in
   procuring the purchase and upon other considerations, that
   plaintiffs should be entitled to one-fourth of the profits aris-
   ing from a resale of the lands.   831 acres were sold when
   plaintiffs brought an action to recover their share of the
   profits.   *Held,* that the contract is entire and indivisible and
   that plaintiffs can not maintain the action until all the land
   has been sold and until it can be ascertained what, if any,
   profits there are upon the transaction.

Appeal from Lyon district court; FREDERICK A.
MECKEL, judge.   Opinion filed March 7, 1914.   Re-
versed.

*R. M. Hamer,* of Emporia, and *R. C. Roper,* of David
City, Neb., for the appellant.

*W. L. Huggins, Henry E. Ganse,* and *Humbert Rid-
dle,* all of Emporia, for the appellees.

The opinion of the court was delivered by

PORTER, J.:  Plaintiffs sued for a share of the profits
in a real-estate transaction, and recovered judgment,
from which defendant appeals.

The plaintiffs are partners engaged in the real-estate
business at Emporia.   The defendant is a corporation
organized under the laws of Nebraska and engaged in
the business of buying and selling real estate.   The
petition alleges that on the 28th day of November, 1910,
the defendant company purchased, for the purpose of
resale at a profit, certain real estate in Lyon county,
consisting of 1167 acres, and known as the Dwelle land;
that immediately thereafter the defendant, by its presi-
dent and secretary, entered into an oral contract with
the plaintiffs by which the plaintiffs agreed to assist in
the resale of the land and in showing the same to pros-
pective purchasers, and were to receive as compensa-
tion a stipulated price per acre; that subsequently the
oral contract was modified in writing, by which the

plaintiffs were to receive for their services one-fourth of the profits of the resale over and above the cost of the land. Attached to the petition was a letter dated December 14, 1910, from the secretary of the defendant, in which it was stated that the company was willing to handle the Dwelle tract of land and allow the plaintiffs one-fourth of the profits over and above the cost. The cause of action is founded upon this letter.

The petition alleges that in September, 1911, the defendant sold a part of the land, 831 acres, at a price which left a profit, one-fourth of which would amount to $2190.62. Plaintiffs remitted a portion of the amount claimed to be due and sued to recover $1995.62 and costs. The answer is voluminous, and sets out much correspondence between the parties, and matters which are of little bearing upon the real issues. The particular defense, however, to which it is necessary to refer is set out in the answer substantially as follows:

It is claimed that Crawford Brothers were the agents of the defendant in the original purchase of the Dwelle land, and falsely represented to defendant that $37.50 per acre was the lowest net price to the owners which the plaintiffs were able to obtain, and falsely concealed from the defendant that they were at the same time acting as agents for the owners of the land; that the defendant believed the plaintiffs were acting solely in its behalf in the transaction; that in fact the real price at which the land was purchased was $35 per acre, and the $2.50 per acre additional paid by the defendant was divided between the plaintiffs and one of the owners of the land as a commission; that by reason of the false and fraudulent acts and representations of the plaintiffs the defendant was damaged in the sum of $2922.50, which was the difference in the price actually paid by defendant and the price which the owners received net to them. The defendant therefore asked judgment for that sum against the plaintiffs. The reply, in addition

to a general denial, specifically denied that the plaintiffs' firm or either member therof acted as the agent of the owners of the land in the sale to defendant.

At the trial defendant introduced in evidence a receipt in writing, signed by each of the plaintiffs, which stated that the amount of commission due them for the sale of the land was $875.25, and acknowledging the payment of $500 of the amount; also checks from Dwelle to the order of Crawford Bros., endorsed by the firm, and aggregating $500. W. T. Crawford admitted that he was to receive this amount of commission from the owners of the land for services in the sale, but denied that his brother received any part of it except some that his brother borrowed from him. E. J. Crawford testified that a private arrangement existed between himself and his brother by which the latter, although his partner, was to represent the owners of the land in the sale, while he was to represent the defendant as purchaser. The explanation for both partners signing the receipt to Dwelle is that Dwelle recognized the firm in the transaction. So far as we are able to gather from the evidence, Hughes, one of the owners of the Dwelle land, knew nothing about any commission, and supposed the land was being sold at $35 per acre. The explanation of the secret arrangement by which one of the firm was to act for the vendors and the other was to represent the purchaser is far from satisfactory. The court in its instructions properly charged that in a transaction where a partnership acts as agent for one party, neither the firm nor any individual member can act as agent for the other party where the interests are conflicting, unless it is done with the full knowledge and consent of both parties, and it is a presumption of law, that where an agent acts for both parties in the same transaction, such action is a fraud upon both principals, and that the burden of proof is upon the agent to prove absolute good faith on his part and to

show that both principals were informed of every fact material to their interests, and that they freely consented to such double agency. That this is the law can not be doubted.

On the trial plaintiffs sought to show that the officers of the defendant had knowledge that one of the firm was to receive, or had received, a commission on the sale, and the court charged the jury that if they should find from the evidence that defendant, through its officers, with such knowledge, agreed to pay plaintiffs a commission on a resale, then the defendant could not recover anything on the cross demand. We think there was no evidence sufficient to warrant submitting the issue of notice to the jury. The evidence relied upon was a statement by W. T. Crawford, that at the hotel in Emporia, on the evening before the contract was closed for the purchase of the Dwelle land, he had a conversation with the secretary of the defendant. He testified:

"We were talking about getting in on the resale. . . . I told him that in taking that price that we wanted to be in on the resale . . . because I did n't get much out of it."

In another part of his testimony he said he used the words "because I did n't get much commission out of it," and he testified that the conversation at this point was interrupted. What, if anything, was said in reply by the secretary of defendant is not shown, and from all the circumstances and all that was said there was not, in our opinion, a sufficient disclosure of the facts to constitute the notice required in such a case. The law is well settled that the burden is upon the agent to make a full disclosure of his dual agency; and where he has acted for both he can not recover from either without a showing that each of the principals had full knowledge of all the circumstances and assented to the double employment. (*Jeffries v. Robbins,* 66 Kan. 427, 437, 71 Pac. 852, and cases cited in the opinion; *Krhut v. Phares,* 80 Kan. 515, 103 Pac. 117.)

In *Bell v. McConnell,* 37 Ohio St. 396, it was said:

"Of course, to relieve such double agent from suspicion that inconsistent duties have been assumed, which *prima facie* will be presumed, it is necessary that it should appear that knowledge of every circumstance connected with his employment by either should be communicated to the other, in so far as the same would naturally affect his action."   (p. 402.)

In *Lynch v. Fallon,* 11 R. I. 311, it was said:

"A broker acting at once for both vendor and purchaser assumes a double agency disapproved of by law, and which, if exercised without the full knowledge and free consent of both parties, is not to be tolerated." (Syl.)

(To the same effect see *Raisin v. Clark,* 41 Md. 158.)

Another instruction is erroneous because the jury were told that if they should believe from the evidence that the plaintiffs honestly and in good faith believed they were entitled to receive a commission on the sale to the defendant, and without any intent on the part of either to deceive or defraud the defendant obtained such commission and retained it, the defendant would be entitled to one-half of the commission, provided the jury further found that there was some arrangement or agreement for a division of commissions earned on similar transactions.   This presented a question with respect to another contract which was not strictly within the issues; and as worded was likely to mislead the jury into the belief that if the plaintiffs in good faith believed they were entitled to act for both parties, they might still maintain this action.   A party will not be permitted to escape the consequences of his fraudulent conduct on the plea that he thought he was acting within his rights in a transaction contrary to sound morals and forbidden by public policy.   In *Smith v. Townsend,* 109 Mass. 500, Smith, who was agent for the vendor, made an arrangement with the prospective purchaser to assist him in procuring the purchase of

48—91 KAN.

the real estate in consideration of which the purchaser was to sell to him a part of the property at an agreed price. It was held that no arrangement that he might make with defendant (the purchaser) in consideration of such double agency could be enforced. Contracts of this character are said to be contrary to good morals and sound policy because they tend to sanction an unwarrantable concealment of facts essential to a contract, and operate as a fraud on parties who have a right to rely on the confidence which they repose in their agents. (*Farnsworth v. Hemmer*, 83 Mass. 494; *Raisin v. Clark*, 41 Md. 158; *Rice v. Wood*, 113 Mass. 133.)

Ordinarily an agent to purchase can not buy of himself (but see *Marshall v. Miles*, 90 Kan. 161, 132 Pac. 1008, where an agent was permitted to recover a commission for a sale to a firm of which he was a partner where the contract with the owner was to find a purchaser for the land at a certain specified price).

There are numerous decisions to the effect that knowledge alone is not sufficient, and many courts have ruled that knowledge and failure to dissent will not prevent the application of the rule that the agent for the sale of property can not at the same time act as the agent of the purchaser and thus become entitled to compensation from both. In *Evans v. Rockett, Appellant*, 32 Pa. Superior Ct. Rep. 365, it was said:

" 'Nothing short of clear and satisfactory proof of an express agreement to do so should be regarded as sufficient for that purpose.' . . . 'He (the defendant) had a right to be silent, even if he knew that the plaintiff had undertaken to serve two masters, and intended to claim compensation from both.' . . . 'Rules of law, such as that under consideration, intended to be preventive of the possibility of wrong, rather than remedial of actual wrong, should be rigidly enforced, unless it clearly appears that the parties, for whose protection they were intended, have, with full knowledge of all the circumstances, agreed to waive their rights thereunder.' " (p. 370.)

(To the same effect see *Rice v. Wood,* 113 Mass. 133, 20 Am. Rep. 460, and *Meyer and another v. Hanchett,* 43 Wis. 246, 250.)

E. J. Crawford admitted in his testimony that the price of the Dwelle land was to be "net" to the owners. At the same time he admitted that he knew before the sale that his brother was to get a commission. The correspondence between the parties shows quite clearly that the defendant supposed it was dealing in this transaction with the firm of Crawford Bros., and there is nothing in the evidence to indicate that the defendant knew anything of a secret arrangement between the parties by which one was to represent the owner of the land. Upon the ground that plaintiffs concealed their dual agency, the court should have denied them any relief.

For another substantial reason, however, the action must fail. Throughout the trial the defendant contended that no cause of action for a share of the profits could accrue in favor of the plaintiffs under the express terms of the contract until all of the land purchased had been disposed of. The point was raised by an objection to testimony, by a demurrer to the evidence, a request for a directed verdict, and by the motion for a new trial, upon all of which the court ruled adversely to the defendant. It appeared from the petition as well as from the evidence that only 831 acres of the 1167 purchased had been disposed of, and plaintiffs' evidence disclosed a further complication from the fact that in the sale of the 831 acres the defendants had taken as part of the consideration a 200-acre tract of land in Nebraska at $150 per acre, and there was no evidence that this last-mentioned tract had been disposed of. It is quite obvious that there may have been a profit on a portion of the land sold and a loss sustained upon the part remaining unsold, and further that until all had been disposed of, including the 200-acre tract taken in exchange, it would be impossible to

determine what, if any, profits accrued to the defendant upon the entire transaction; and it is equally clear, we think, that the contract sued upon is entire and indivisible. (See Note, 59 Am. St. Rep. 277-295.)

The petition on its face showed that the action was prematurely brought; and the plaintiffs' evidence only made that fact stand out with greater prominence. It is stated to be a general rule that "an action commenced upon a contract before the expiration of the time fixed for performance is premature and can not be maintained." (1 Cyc. 742, and cases cited in Note 10; 16 Encyc. Pl. & Pr. 878.)

Plaintiffs could not maintain an action to recover the profits until the whole transaction was closed or until the question and amount of profits could be ascertained.

The general rule is that whether or not a contract is entire or indivisible is one of construction, to be determined by the court according to the intention of the contracting parties as ascertained from the contract itself and upon a consideration of all the circumstances surrounding the making of it. (*Sterling v. Gregory,* 149 Cal. 117, 85 Pac. 305; *Toher v. Schaefer,* 91 N. Y. Supp. 3.)

In *Weber v. Clark,* 24 Minn. 354, the defendant owned a farm of two hundred acres and agreed to pay Weber $100 if he would find a purchaser for it. Plaintiff found a purchaser for one hundred and seventeen acres of the farm, and Weber sued for the commission. It was held that he was not entitled to recover anything.

In *Broxton v. Nelson,* 103 Ga. 327, 30 S. E. 38, the plaintiff obligated himself to build four houses and the defendant agreed to pay a gross sum therefor. The contract was held to be entire and not divisible. The word "profits" as applied to a transaction has a well-defined meaning, and as used in this contract must be construed to apply to the transaction in its entirety, that is to say, the net gains resulting from the entire

purchase and sale of the lands; and we discover nothing in the evidence or from a consideration of all the circumstances surrounding the making of the contract to take the case out of the general rule or to indicate a different intention of the parties.

It follows that the judgment will be reversed with directions to dismiss the plaintiffs' cause of action at their costs.