No. 20,001.

F. E. BEESON, *Appellant*, v. WILLIAM O. TRAINER, *Appellee*.

SYLLABUS BY THE COURT.

1. REAL-ESTATE AGENT—*Acting in Dual Capacity—Findings—Commissions*. Findings of fact examined and held to be consistent with each other and with the general verdict. Held further, that the rule that a real-estate agent acting for both vendor and purchaser must do so with the full knowledge and consent of both in order to recover a commission from both was complied with.

2. SAME—*Contract Between Agents to Divide Commission—Maturity*. A real-estate agent employed another to assist him in negotiating a trade, agreeing in writing to divide a commission of $5000, to be paid by the principal, upon payment by the principal. The agent settled with the principal for a sum less than $5000, which the principal paid. *Held*, the contract impliedly warranted that the principal would pay the sum of $5000 as a commission and that the contract matured when the principal settled with his agent.

Appeal from Riley district court; FRED R. SMITH, judge. Opinion filed March 11, 1916. Reversed.

*Edgar Bennett*, and *Charles W. Clarke*, both of Washington, for the appellant.

*Hal E. Harlan*, of Manhattan, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a real-estate agent to recover a commission which another real-estate agent agreed to pay. The general verdict was for the plaintiff. The court granted a new trial on the ground that certain special findings returned by the jury were inconsistent with themselves and with the verdict. The plaintiff appeals.

The defendant, Trainer, who lived in Chicago, represented Cooper, the owner of the Admar ranch in Kingman county. The plaintiff, Beeson, who lived in Washington, Kan., had on his list a body of land situated in Pottawatomie county belonging to Williamson. Trainer's advertisement of the Admar ranch was answered by Hackney, a real-estate agent of Washington, Kan., and Hackney arranged for a meeting between Trainer and Williamson to take place at Manhattan.

Beeson went to Manhattan at the request of Hackney and Williamson. Trainer expected to find Hackney at Manhattan, but was told by Beeson that Hackney did not think it was necessary for him to be present so long as Beeson was there. Negotiations resulted in a trade between Cooper and Williamson. Trainer, Beeson and Williamson met at the Gillett Hotel in Manhattan to conclude the transaction. Trainer dictated a contract between Cooper and Williamson, which was signed by Trainer for Cooper, and by Williamson. At the request of Beeson, Trainer then wrote a contract to pay Beeson one-half of $5000, the commission coming to Trainer from Cooper, and wrote a contract for Williamson to sign, wherein he agreed to pay Beeson a commission for representing him. These instruments were talked about and were signed in the presence of Trainer. Both commission contracts were in accordance with previous oral agreements, and Beeson promised to protect Trainer against any claim which Hackney might make. Williamson fully understood that Beeson was to receive a commission from Trainer, and freely consented that he should do so.

The action was founded on the written contract between Trainer and Beeson. The principal defense was that Trainer was induced to agree to pay Beeson a commission through false representations that Williamson would not pay Beeson a commission, and that Trainer was ignorant of the fact that Beeson was getting a commission from Williamson. Another defense was that Beeson agreed to release Trainer if Williamson finally agreed to pay a commission to Beeson. These defenses failed, and Beeson's claim was ultimately resisted on the unpleaded ground that Beeson did not fully disclose his dual agency to Williamson.

The special findings of fact read as follows:

"1. Do you find that the plaintiff, Beeson, fully made known to the defendant, Trainer, the fact that Williamson agreed to pay him, the plaintiff, a commission for his services as agent, and that Beeson disclosed this fact to the defendant prior to the time the written agreement sued on was signed by Trainer? A. Yes.

"2. Did the defendant, Trainer, freely consent that plaintiff, Beeson, should act for both the defendant and Williamson, and that he should receive commission from both parties? A. Yes.

"3. Did the defendant, Trainer, have knowledge that Williamson had signed an agreement to pay plaintiff, Beeson, a commission of $1890

for his services as agent, prior to the signing of the written agreement by Trainer? If you find in the affirmative, state the source of his knowledge, when he acquired it and where? A. Yes. When he had written the agreement and gave to Williamson to sign. Jan. 18th, 1913. In the Gillett Hotel.

"4. Did the plaintiff, Beeson, fully disclose to his principal, Williamson, the fact that the defendant, Trainer, had agreed to pay him, the plaintiff, a commission of $2,500 for his services as agent of defendant, and did the plaintiff fully disclose the fact of his employment by Trainer to Williamson prior to accepting a written agreement for compensation from Williamson. A. No.

"5. Did Williamson freely consent that the plaintiff, Beeson, should act as the agent of both the defendant and Williamson, and that the plaintiff should receive compensation from both parties? A. He did.

"6. Did Williamson have knowledge that his agent, the plaintiff, had accepted employment in this transaction from the defendant, Trainer, and that he had accepted a written agreement from said Trainer for the payment of a $2,500 commission, at any time prior to the consummation of this trade? If you answer this question in the affirmative, state the source of his knowledge, when he acquired it, and where. A. No.

"7. Was the written agreement between Trainer and Beeson procured by false and fraululent representations made by Beeson to Trainer, relative to his, Beeson's, not being able to get Williamson to pay plaintiff a commission? A. No.

"8. Did Beeson render any service to defendant under a contract, express or implied, with the defendant in effecting an exchange of said properties? If you answer in the affirmative state when, where and how said services were rendered. A. Yes. From the time he met Trainer at the Gillett, until the 19th of Feb. 1913. In Kingman Co., Manhattan and Topeka. By helping to bring the parties concerned together and consummating this trade."

The court having specified the ground on which a new trial was granted, none other is open to consideration.

The supposed inconsistency is between findings 4 and 6 and finding 5. Questions 4 and 6 were compound questions. It is the duty of the court to interpret the answers in such a way as to harmonize all the findings with each other and with the general verdict if it be possible to do so. In order to do this, the answer to a compound question may be considered as a literal response to the entire question and not as if independent answers were made to each inquiry. Beeson did not disclose to Williamson the fact that Trainer had agreed to pay Beeson *a commission of $2500;* so the fourth finding was properly in the negative. Williamson did not know that Beeson had accepted *a written agreement* from Trainer for the payment of a

commission prior to the consummation of the trade, because there was no written agreement relating to commission prior to the consummation of the trade; so the sixth finding was properly in the negative. Williamson might freely consent that Beeson should act for both Trainer and himself and receive compensation from both without knowing just how much Trainer was to pay, and without knowing whether the arrangement between Trainer and Beeson was oral or in writing. With respect to the division of commission between Trainer and Beeson, Williamson testified he understood Trainer was dividing commission with Beeson, but that it was none of his (Williamson's) business if Trainer were giving part of it or all of it. Of course it was not material whether the agreement between Trainer and Beeson to divide Trainer's commission were oral or in writing. That Williamson did freely consent that Beeson should act for Trainer as well as for himself and receive a commission from both was fully established by Williamson's own testimony. Under these circumstances the findings may not only stand with each other but may stand with the general verdict.

The defendant assigns as error the overruling of his demurrer to the plaintiff's evidence. The argument is that the evidence shows Beeson forfeited his commission because he did not fully disclose to Williamson his relation to Trainer. In order to meet the demands of public policy, a real-estate broker acting for both vendor and purchaser must do so with the full knowledge and consent of both in order to recover a commission from both. Full knowledge means knowledge of every fact which would naturally affect the action of the agent. (*Crawford v. Investment Co.,* 91 Kan. 748, 139 Pac. 481; *Hoffhines v. Thorson,* 92 Kan. 605, 141 Pac. 253.) In the Crawford case, Hughes, one of the landowners, knew nothing whatever of the commission, and only a bare hint of the dual relation was given to the secretary of the investment company. In the Hoffhines case, Snyder, one of the parties to the trade, did not know that the agent was acting for the other party. In this case the amount of the commission to be paid by Trainer and the manner in which it was secured, whether by oral or written promise, were unimportant. The fact of the dual agency was the important thing, and this fact was understood

and consented to by Williamson from the beginning.   It will be recalled that Hackney brought Williamson and Trainer together.   It was Hackney who arranged for the Manhattan meeting.   Before doing this Hackney corresponded with Trainer and secured from him an agreement to pay a commission.   Hackney showed this correspondence to Williamson, and Williamson believed that Hackney and Beeson were working together.   Under these circumstances, Hackney and Williamson both asked Beeson to go to Manhattan, and Hackney did not go because it was not necessary so long as Beeson was there.   Williamson testified as follows:

"Q.  Did you know at that time of Beeson's having secured a written agreement from Trainer for a division of commission?   A.  Did I know that he had—

"Q.  Secured a written agreement for it?   A.  Beeson?

"Q.  Yes.   A.  Why no, I don't think I knew that.   I did n't know they went into any agreement, that is, as a written agreement.   I don't remember anything like that.

"Q.  Did Beeson inform you of the fact that he had a written agreement or expected to receive a commission from Trainer?   A.  Well, he did n't say anything about a written agreement, but they had—it was my understanding that he was dividing a commission with Trainer; *yes, that was the understanding.*"

It may be true that Beeson did not at any time say to Williamson in so many words that he was acting for Trainer, but it was not necessary that he should do so, because Williamson himself brought Beeson into the negotiations on the assumption and with the understanding that Beeson was to receive a commission from Trainer.   All that was then necessary was that Trainer be informed of Beeson's relation to Williamson, and consent to it.   There is no claim that Beeson fraudulently favored one client at the expense of the other, and both parties having had the benefit of his knowledge, advice, and assistance, he is entitled to the compensation which each agreed to pay.

The contract between Trainer and Beeson reads as follows:

*"To Mr. F. E. Beeson:*

· "I herewith agree to pay you one-half of five thousand dollars to be paid me by S. T. Cooper upon payment by said Cooper as your pay for aiding me in securing sale of the lands of said Cooper under the terms of contract made January 18, 1913, between Matt V. Williamson and S. T. Cooper.                              WILLIAM O. TRAINER."

There was evidence that Cooper had settled with Trainer for $2875 and that nothing more was due. Trainer argues that time for payment to Beeson has not yet arrived because Cooper has not yet paid $5000. Contracts are not so easily defeated. This one impliedly warranted that the amount to be paid by Cooper was $5000, one-half of which was due Beeson when Cooper paid. Cooper has paid, and Trainer must now pay.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment on the general verdict.